<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID BOURHILL,<br><br>               Plaintiff,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION, et al.,<br><br>              Defendants | Civil Action No. 10-5793 (JLL)<br><br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendants' appeal of the portion of Magistrate Judge Michael A. Hammer's ("Judge Hammer")'s Order of November 15, 2012 that denied Defendants' motion to strike Plaintiff David Bourhill's ("Plaintiff" or "Bourhill")'s motion for summary judgment. The Court has considered the submissions made in support of and in opposition to Defendants' appeal, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Judge Hammer's November 15, 2012 Order is AFFIRMED.

## I.  BACKGROUND

As the Court writes only for the parties, a familiarity with the underlying factual and procedural background of this case will be assumed, and will not be repeated here except where necessary to provide proper context for the pending appeal.

Plaintiff was employed by Defendant Sprint Nextel Corporation ("Sprint") until approximately September 1, 2009, at which time Sprint terminated his employment.

Immediately prior to his termination, Plaintiff had been on disability leave—at first, to care for his disabled daughter, and then as a result of a back injury. (Pl. Opp'n Br. at 3.)

On February 3, 2010, Sprint received a letter (the "February 3 letter") from Plaintiff's counsel that set forth the reasons for Plaintiff's belief that his termination was unlawful under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.* This letter concluded as follows:

> While we have advised Mr. Bourhill that we are prepared to take his claims forward to litigation, he has advised us that he would prefer at this time to resolve this situation informally, by means of a [sic] adequate compensatory settlement. Please contact me, or have your attorney contact me, to discuss whether you desire to resolve this matter amicably, privately, and without resort to litigation. If I do not hear from you by February 22, 2010, we will proceed to take action to enforce Mr. Bourhill's rights.
>
> Finally, this correspondence hereby advises you that a potential for litigation exists regarding this matter. . . .

(Hamilton Decl., Ex. A.)

On April 20, 2010, Plaintiff received a response letter (the "April 20 letter") from Heather Gill, an in-house lawyer at Sprint. The letter included the words "**Confidential/For Settlement Purposes Only**" on the subject line. (*Id.*, Ex. B.) The body of the letter stated as follows:

> I spoke to your assistant last week regarding your client's allegations that Sprint violated the New Jersey Law Against Discrimination. As I advised her, my investigation does not support your allegations. Mr. Bourhill's employment was terminated when, after being out of work for eight months, he went on long-term disability, a termination which was mandated by the Plan documents. Our records show his long-term disability benefits were approved through May 31, 2010. Even if Mr. Bourhill was able to return to work without restrictions in December 2009, Sprint does not grant employees one-year leaves of absences and, in this case, would have been prohibited from doing so by the Plan documents requiring termination of

2

employment. While Mr. Bourhill remained free to re-apply for available positions at Sprint once he was cleared for work, our records show he failed to do so.

I also further noted that although your letter of February 3 inquires as to Sprint's interest in an amicable resolution, the letter does not request any specific relief. I asked your assistant if your client was attempting perhaps to use this letter as leverage to avoid repaying Sprint the overpayments he received in the amount of $7,564.57. She did not know but indicated you would get back to me. As I have not heard from you to date, I am following up via letter. In short, it is difficult to consider an amicable resolution without knowing the relief sought by your client. If you would like to get back to me with a specific proposal that also addresses the overpayments received by your client, I remain available. Thank you.

(*Id.*)

On September 17, 2010, Plaintiff filed a complaint in state court asserting three causes of action: (1) Failure to Accommodate in Violation of the NJLAD; (2) Failure to Consider Accommodation Prior to Termination in Violation of the NJLAD; and (3) Wrongful Termination in Violation of the NJLAD. Defendants removed the complaint to this Court on November 8, 2010. (CM/ECF No. 1.)

On September 21, 2012, the parties filed cross-motions for summary judgment. (CM/ECF Nos. 29, 30.) Plaintiff appended the April 20 letter as an exhibit to his summary judgment motion, and relied on it in his brief. On October 5, 2012, Defendants moved to strike Plaintiff's summary judgment motion to the extent that it relied upon the April 20 letter. According to Defendants, Plaintiff's reliance on the April 20 letter is improper under Fed. R. Evid. 408 because that letter was written in the course of settlement communications.

On November 14, 2012, Judge Hammer heard oral argument on Defendants' motion to strike, and issued an oral ruling granting the motion in part and denying it in part. Specifically, Judge Hammer struck the second paragraph of the April 20 letter upon concluding that that

3

paragraph implicates Rule 408 because it "contains an invitation to Bourhill to make a settlement proposal." (*See* Alito Decl., Ex. A. at 41:20-22.) Judge Hammer denied the motion as to the first paragraph, however, upon finding that it does not "contain an actual compromise or a suggestion of a genuine willingness to resolve a dispute." (*See* Alito Decl., Ex. A at 40:9-11.) Judge Hammer entered an order memorializing his ruling on November 15, 2012. (CM/ECF No. 41.) This appeal followed.

## II.   LEGAL STANDARD

Pursuant to L. Civ. R. 72.1(c)(1)(A), a party may appeal a magistrate judge's non-dispositive order. "A Judge shall consider the appeal . . . and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A); Fed. R. Civ. P. 72(a). The appealing party bears the burden of establishing that the magistrate judge's decision is clearly erroneous or contrary to law. *Control Screening, LLC v. Integrated Trade Sys.*, No. 10-499, 2011 U.S. Dist. LEXIS 85202, at *16. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bobian v. CSA Czech Airlines*, 222 F. Supp. 2d 598, 601 (D.N.J. 2002) (citation and internal quotation marks omitted). The district court will not reverse the magistrate judge's factual determinations, even in circumstances in which the "court might have decided the matter differently." *See Bowen v. Parking Auth. of City of Camden*, No. 00-5765, 2002 U.S. Dist. LEXIS 14585, at *9 (D.N.J. July 30, 2002). A ruling is "contrary to law if the Magistrate Judge has misinterpreted or misapplied applicable law." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

In matters where the magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only if the magistrate judge has abused that discretion. *See, e.g., Kresefsky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion."). However, a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed *de novo*. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992).

## III.   DISCUSSION

Under Fed. R. Evid. 408, evidence of the following is inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:"

> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim – except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

If, in fact, the entirety of the April 20 letter falls within the ambit of Fed. R. Evid. 408, the Court may not consider it in ruling on Plaintiff's motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *see also Allia v. Target Corp.*, No. 07-4130, 2010 WL 1050043, at *5 n.5 (D.N.J. Mar. 17, 2010) (refusing to consider letter drafted in the course of settlement negotiations in deciding summary judgment motion).

5

Defendants make the following points to support their argument that Judge Hammer erred in declining to strike the entirety of the April 20 letter—(1) Judge Hammer "misapplied the law by finding that the parties were not engaged in ongoing compromise negotiations;" (2) Judge Hammer erred in holding that Rule 408 permits the admission "of a settlement letter as evidence of liability despite having already ruled that another portion of the same letter constitutes a statement made in compromise negotiations protected by Rule 408;" and (3) Judge Hammer's ruling undermines the public policy interests underlying Rule 408. (*See* Def. Br. at 10-38.) The Court will address each of these arguments in turn.

## A. Whether it was Error to Hold that the Parties were not Engaged in Ongoing Compromise Negotiations

Defendants contend that Judge Hammer "misinterpreted what constitutes a 'concession' or engagement in 'compromise negotiations' in civil litigation, and by misinterpreting that factor, he misapplied it to the current facts." (Def. Br. at 12.) Specifically, Defendants take exception to Judge Hammer's conclusion that the first paragraph of the April 20 letter is not protected under Rule 408 because it does not "contain an actual compromise or a suggestion of a genuine willingness to resolve the dispute." (*See id.* at 17, citing Alito Ex. A. at 40:9-11.)

At the outset, the Court notes that Defendants have not cited a single Third Circuit case, or any other binding authority, that specifically supports their argument that Judge Hammer "misinterpreted what constitutes a 'concession' or engagement in 'compromise negotiations.'" Rather, Defendants have attempted to distinguish the cases that Judge Hammer cited as persuasive authority supporting his determination that the parties were not engaged in ongoing settlement negotiations. (*See* Def. Br. at 12-16.)

Even assuming *arguendo* that the cases that Judge Hammer cited are factually distinguishable, this Court is not persuaded that Judge Hammer clearly erred in finding that the

6

April 20 letter did not represent an attempt to compromise or settle the dispute. To be clear, Judge Hammer's findings that the April 20 letter was not written in the course of settlement discussions, and that the first paragraph of said letter does not contain an offer to compromise or express a willingness to settle, are factual findings. *See, e.g., Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992) (observing that "whether an offer was made in the course of settlement negotiations" is a "preliminary *factual* question") (emphasis added). A district court will overturn a magistrate judge's factual findings on a non-dispositive motion if, based on the record before the court, it has a "definite and firm conviction" that the magistrate judge has made a mistake. *See Bobian*, 222 F. Supp. 2d at 601. This Court has no such definite and firm conviction. Accordingly, it will not disturb Judge Hammer's findings with respect to the April 20 letter.

As to the law, the Court is not persuaded that Judge Hammer applied an excessively restrictive interpretation of the words "concession" or "compromise negotiations." Contrary to Defendant's assertion, Judge Hammer did not hold that demand letters and responses to such letters "categorically" fall outside the ambit of Rule 408. Nor did Judge Hammer conclude that the First Circuit so held in *Rodriguez-Garcia v. Municipality of Caguas*, 495 F.3d 1 (1st Cir. 2007). Rather, Judge Hammer noted that "federal courts routinely hold that demand letters and responses to such letters are not within the scope of Rule 408," and specifically observed that the *Rodriguez-Garcia* court held that "demand letters were not covered by Rule 408 because no concessions were being offered or suggested" in the letters at issue in that case. (Alito Decl., Ex. A at 35:16-18.) Although Judge Hammer's ruling suggests that demand letters generally fall outside the scope of Rule 408 because they usually lack offers of settlement or compromise, or

7

any concessions in furtherance thereof, it does not suggest that Rule 408 would be inapplicable to demand letters in *all* circumstances.

More importantly, Judge Hammer's ruling is in accord with the Third Circuit's observation that "[t]he application of [Rule 408] is limited to evidence concerning settlement or compromise of a claim," and that "the facts of each case bear upon the trial court's exercise of discretion to apply the exclusion." *See Affiliated Mfrs. v. Aluminum Co. of Am.*, 56 F.3d 521, 526, 528 (3d Cir. 1995). Judge Hammer made a factual determination that the first paragraph of the April 20 letter "does not contain an actual compromise or a suggestion of a genuine willingness to resolve the dispute." (Alito Decl., Ex. A at 40:9-10.) Based upon this factual determination, Judge Hammer declined to strike the first paragraph of the April 20 letter pursuant to Rule 408. The Court fails to see how Judge Hammer's application of Rule 408 to the facts, as he interpreted them, either is contrary to law or amounts to an abuse of discretion.

## B. Whether it was Error to Strike only a Portion of the April 20 Letter under Rule 408

Defendants argue that it was clear error for Judge Hammer to find that the first paragraph of the April 20 letter does not "set up, involve, or tie into the invitation for a specific offer in the second paragraph" because "the purpose of that paragraph was to lay the foundation for Sprint's position that Bourhill should expect little compensation in exchange for foregoing his claims." (Def. Br. at 24-25, citing Alito Decl., Ex. A at 42:24.) Defendants further claim that Judge Hammer erred in concluding that the law permits him "to divorce the first paragraph of the April 20 letter from the second paragraph, and admit the former while holding that the latter is protected by Rule 408." (Def. Br. at 24.)

As a factual matter, Judge Hammer determined that "the two paragraphs [of the April 20 letter] are not logically connected," and that "the letter reads as Sprint's response to Bourhill's

8

demand letter and the merits articulated in Bourhill's demand letter about . . . the plaintiff's claims and separately, [responds to] a request from Bourhill to make a specific settlement offer." (Alito Decl., Ex. A 42:18-23.)  Even if this Court agreed with Defendant's argument that the purpose of the first paragraph of the April 20 letter was to lay the proper foundation for the second paragraph, this Court would set aside Judge Hammer's finding only if it had a "definite and firm conviction" that Judge Hammer's findings are wrong.  *See Bowen*, 2002 U.S. Dist. LEXIS 14585, at *8; *Bobian*, 222 F. Supp. 2d at 601.  This Court will not hold that it was clear error for Judge Hammer to find that the two paragraphs of the April 20 letter "are not logically related," because this Court considers Judge Hammer's findings to be reasonable in light of the record that was before him.

As a legal matter, Judge Hammer did not err in concluding that it was permissible "to redact any language that potentially offends or implicates Rule 408 and preserve the remainder." (Alito Decl., Ex. A at 41:6-7.)  Of note, Defendants do not cite a single Third Circuit case supporting their proposition that Judge Hammer's decision to strike part of the April 20 letter, while admitting the other part, is contrary to law.  Instead, Defendants attempt to distinguish the persuasive cases that Judge Hammer cited for the limited proposition that it is appropriate to strike only that portion of a letter that implicates Rule 408 rather than striking the letter in its entirety.  That these cases may present distinct facts from those that exist in this matter, however, does not undermine Judge Hammer's main point that there is precedent for courts redacting portions of documents implicating Rule 408 when other portions of the same documents do not implicate that rule.  *See, e.g., Wingert & Assocs. v. Paramount Int'l, Inc.*, No. 03-6451, 2005 U.S. Dist. LEXIS 26064, at *9 (D. Minn. Oct. 31, 2005) (redacting portion of document potentially related to settlement negotiation); *King v. Univ. Healthcare Sys., L.C.*, No. 08-1060,

2009 U.S. Dist. LEXIS 130187 (E.D. La. July 24, 2009) (excluding as evidence only portions of emails containing statements made in furtherance of compromise negotiations, but declining to exclude email chain in its entirety); *Shepherd v. Pneumo-Abex, LLC*, MDL No. 09-91428, 2010 U.S. Dist. LEXIS 90122, at *4 (E.D. Pa. Aug. 30, 2010) (redacting portions of documents referencing offers of compromise or settlement amounts).

In light of Defendants' failure to cite any specific authority supporting their proposition that it is unlawful to redact a portion of a document that may implicate Rule 408 and preserve the remainder, this Court is not persuaded that Judge Hammer's decision to redact only a portion of the April 20 letter is contrary to law.

## C. Whether Judge Hammer's Ruling Undermines the Policy Interests Underlying Rule 408

Defendants argue that Judge Hammer's decision to admit statements of fact accompanying statements which he held were protected under Rule 408 undermines Rule 408's purpose of encouraging settlement, and the bright line rule it created "to avoid any need for courts to consider whether a given statement is a compromise statement versus an unqualified statement of fact." (Def. Br. at 32-36) Defendants also contend that if Judge Hammer's ruling stands, "no lawyer can confidently advise a client what magic words must go into a settlement letter in order for it to be protected by Rule 408." (Def. Reply Br. at 12.)

Although this Court agrees that the policy underlying Rule 408 requires the exclusion of any statement made in the course of settlement discussions that is relevant to the issue of liability, it respectfully disagrees with Defendants' assertion that Judge Hammer's ruling undermines this policy. It bears mentioning that Judge Hammer specifically noted that neither the February 3 letter nor the April 20 letter can be "fairly called purely a settlement communication," and that "even the second paragraph [of the April 20 letter] does not contain an

10

explicit offer of compromise." (Alito Decl., Ex. A at 36:25, 41:5-6.) Notwithstanding these factual findings, Judge Hammer struck the second paragraph of the April 20 letter upon determining that the contents of that paragraph "could *potentially* be considered conduct or statement made during compromise negotiations under Rule 408(a)(2)." (*See* Alito Decl., Ex. A at 41:23-25, emphasis added). Thus, Judge Hammer's decision to strike the second paragraph of the April 20 letter is in accord with the Third Circuit's recognition that "if application of Rule 408 exclusion [is] doubtful, better practice is to exclude evidence of compromise negotiations." *See Affiliated Mfrs.*, 56 F.3d at 528 (citation omitted).

Indeed, Judge Hammer's ruling balances the Federal Rules of Evidence's general purpose of "ascertaining the truth and securing a just determination," *see* Fed. R. Evid. 102, with Rule 408's specific purpose of encouraging settlement and compromise. *See Affiliated Mfrs*, 56 F.3d at 526.

## IV.   CONCLUSION

For the foregoing reasons, Judge Hammer's Order granting in part and denying in part Defendants' motion to strike is AFFIRMED. An appropriate Order follows.


Date: January 23, 2013




_____
JOSE L. LINARES
U.S. DISTRICT JUDGE