**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID BOURHILL, <br><br> Plaintiff, <br><br> v. <br><br> NEXTEL OF NEW YORK, INC. and KENNETH BETZA, <br><br> Defendants. | Civil Action No. 10-5793 <br><br> **OPINION** |

This matter comes before the Court by way of the Plaintiff and Defendants' cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* CM/ECF No. 56 ("Defs. Br."); *see also* CM/ECF No. 57 ("Pl. Br."). The Court has considered the submissions of the parties in support of and in opposition to the present motions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's Motion for Summary Judgment on Plaintiff's Complaint [CM/ECF No. 57] is denied and Defendants' Motion for Summary Judgment on Plaintiff's Complaint [CM/ECF No. 56] is granted.

**I.    BACKGROUND**

Sprint Nextel Corporation[1] is a global provider of wireless voice, data, and internet services and conducts its business through various subsidiaries, including Sprint. Def. Statement of Material Facts Not in Dispute ("Def. SOF") at ¶ 1. David Bourhill ("Plaintiff") began

---

[1] Nextel of New York, Inc. is an indirect, wholly owned subsidiary of Sprint Nextel Corporation. Def. SOF at ¶ 1. For the purposes of this Opinion, Nextel of New York, Inc. will be referred to as "Sprint."

working at Sprint, then known as Nextel, as a customer service representative in 1998. Def. SOF at ¶ 2. After various promotions and transfers, Plaintiff became a Government Account Executive around April of 2004. Def. SOF at ¶ 2. Kenneth Betza ("Betza") was a coworker of Plaintiff on the Government Sales Team when Plaintiff joined it in 2004. Def. SOF at ¶ 3. Betza was subsequently promoted to manager in March 2005 and remained in that position through the end of Plaintiff's employment with Sprint in September 2009. Def. SOF at ¶ 3.

In Plaintiff's position, he worked on an eight person sales team that sold to government entities in New Jersey and in the Hudson Valley of New York. Def. SOF at ¶ 4. Each sales team member had their own accounts to manage. Def. SOF at ¶ 5. Plaintiff and his colleagues were also tasked with obtaining new business for Sprint. Def. SOF at ¶ 6. Plaintiff's position was full time, and he worked very hard as a government account executive. Def. SOF at ¶ 7. He worked nights and weekends and worked long hours. Def. SOF at ¶ 7.

On March 3, 2008, Plaintiff submitted an application for intermittent leave under the federal Family & Medical Leave Act ("FMLA") to care for his daughter, who suffers from a medical condition. Def. SOF at ¶ 8. Plaintiff's request for leave was granted, and Plaintiff took intermittent leave from March 2008 through November 2008, which included two full weeks of leave. Def. SOF at ¶¶ 8-9. Plaintiff also took the entire month of December 2008 off to care for his daughter, for a total of six weeks of leave in addition to his intermittent absences through 2008. Def. SOF at ¶ 9.

In November 2008, Plaintiff injured his back. Def. SOF at ¶ 10. He was unable to walk without extreme pain and had numbness in his leg, making standing impossible. Def. SOF at ¶ 10. While still on FMLA leave, Plaintiff requested an additional leave of absence and short-term disability ("STD") benefits for his back injury. Def. SOF at ¶ 10. Sprint granted Plaintiff a leave

of absence for January 2009, with STD benefits coverage.[2] Def. SOF at ¶ 11. During the last week of January, Plaintiff's physician submitted a request for an extension of Plaintiff's leave to April 1, 2009, which Sprint also granted. Def. SOF at ¶ 12.

On April 1, 2009, Sprint sent Plaintiff a letter notifying him that he would be eligible for long-term disability ("LTD") benefits on June 5, 2009, and noting that an "employee that is approved for LTD is no longer considered actively employed with Sprint as of the STD benefit exhaust date." Def. SOF at ¶¶ 13-14. Plaintiff did not recall reading the letter and testified that he did not know until August 2009 that he would no longer be considered actively employed if he applied for and received LTD benefits. Pl.'s Resp. to Def. SOF at ¶ 15. On April 1, 2009, Plaintiff also received a call from Betza notifying him that Human Resources believed he was returning to work that day. Def. SOF at ¶ 16. After receiving this call, Plaintiff emailed Human Resources and notified them that his doctor had extended his disability until June 1, 2009. Def. SOF at ¶ 16. On April 7, 2009, Sprint notified Plaintiff that, although his FMLA leave expired on March 23, 2009, Sprint would still grant his request and extend his STD benefits and leave until June 1, 2009. Def. SOF at ¶ 17.

On May 5, 2009, Plaintiff's physician contacted Sprint and requested that Sprint extend Plaintiff's leave again, this time until July 1, 2009. Def. SOF at ¶¶ 18-19. Sprint granted this request but Plaintiff was not ready to return to work on July 1, 2009. Def. SOF at ¶ 19.

---

[2] Sprint alleges that there was a payroll error while Plaintiff was on leave for disability resulting in Plaintiff receiving the following erroneous payments:
1. On July 10, 2009, Plaintiff received double the amount of STD benefits he was entitled to receive—$5,460.80 rather than $2,730.40;
2. On July 24, 2009, Plaintiff received STD benefits totaling $5,460.90 even though Plaintiff had exhausted his STD benefits and was not entitled to any of that amount; and
3. On March 31, April 30, June 30, July 31, and September 31, 2009, Plaintiff received commission payments even though he was receiving disability benefits and therefore not entitled to commission.

Def. SOF at ¶¶ 50, 52.

3

Plaintiff's STD benefits were scheduled to expire the first week of July 2009. Def. SOF at ¶ 21. Accordingly, Sprint employee Kimberly Spence ("Spence") submitted an application for LTD benefits at Plaintiff's request to Aetna, Sprint's long-term disability carrier. Def. SOF at ¶ 20.

On August 12, 2009, Plaintiff emailed Betza writing, "I looked over my paperwork they originally sent me and it doesn't appear that I am required to sign anything prior to my return, just show up on 9/1." Def. SOF at ¶ 23. The next day, Plaintiff again contacted Betza and wrote that Plaintiff had spoken to Spence and was advised to "ask [Betza] if I have a job when I return?" Def. SOF at ¶ 24. Plaintiff explained that "[t]hey are claiming that my job is no longer protected because I have applied for long term disability, unfortunately nobody ever notified me of that provision." Def. SOF at ¶ 24. Later that day, Plaintiff contacted Betza again stating that he had "nothing that says [his] job is no longer protected" and that he has "another procedure" and does not "need the stress." Def. SOF at ¶ 25. Plaintiff subsequently received a letter, dated August 13, 2009, stating that his request for a Leave of Absence ending on September 1, 2009, was granted. Def. SOF at ¶ 27.

On August 21, 2009, Plaintiff received a letter from Sprint indicating that:

> Aetna has notified us that your Long-Term Disability (LTD) claim has been approved . . . Once you have been approved for and begin receiving LTD benefits, you are no longer considered an active employee of Sprint. Please contact your supervisor to discuss any unused vacation time.

Def. SOF at ¶ 28. Despite the language in this letter, Defendants Sprint and Betza (collectively "Defendants") allege that Plaintiff's employment was not terminated as of that date. *See* Def. SOF at ¶ 29; *see also* Pl.'s Resp. to Def. SOF at ¶ 29. Plaintiff acknowledges that he still believed he had a job and still intended to return to work on September 1, 2009. *See* Def. SOF at ¶ 37. On August 25, 2009, Betza emailed Plaintiff a "Medical Release Form" for his physician to complete and return to Sprint. Def. SOF at ¶ 35. Plaintiff did not have his physician complete

this form and explained that, as of August 27, 2009, Plaintiff believed that he would be returning to work on September 1, 2009, with no restrictions and therefore did not need to have this form completed. Def. SOF at ¶ 35.

On August 31, 2009, Plaintiff emailed Betza stating that:

> I am suppose [sic] to go see my doctor tonight at 5pm to discuss my back, it has been suggested that I undergo a nerve block to relieve the pain and discomfort in my leg and back. Should that procedure not work a second surgery might be required to relieve my pain[.]
>
> What I am asking is that after my appointment should we decide that I need additional time off in order to properly heal so I can continue to work free of pain and discomfort would you allow me this time off?

Def. SOF at ¶ 36. Betza forwarded Plaintiff's email to Sarah King ("King") who then sent it to Brian Nelson ("Nelson"), Sprint's Human Resources/Leave Management Group manager. Pl. Statement of Material Facts Not in Dispute ("Pl. SOF.") at ¶¶ 29-30. Nelson responded that, "this is why we term[inate] employees who have been approved LTD benefits." Pl. SOF at ¶ 31. Nelson then replied a second time stating that Plaintiff "needs to be term[inat]ed or placed back on LOA. We cannot be continuing benefits for free." Pl. SOF at ¶ 32.

King clarified that it did not sound like Plaintiff was "not reporting back" but instead asking that "if he had to go out again what are his option[s]." Pl. SOF at ¶ 33. Patterson responded that, if that is the case,

> He would need to contact Aetna, who is the LTD carrier, and let them know what is going on. He would be allowed a trial return to work period and they would continue to pay him based on how much he works. If he does return to work, then we can keep him in active status; however, if he doesn't then we really should follow procedure and term[inate] his employment and notify him and his supervisor that when he is ready to come back and his position hasn't been filed, he would need to contact his supervisor to "fast track" a rehire.

Pl. SOF at ¶ 34.

5

On September 1, 2009, Plaintiff came to Sprint dressed for work. Def. SOF at ¶ 37. Plaintiff saw Betza and spoke with him in the parking lot. Def. SOF at ¶ 37. Plaintiff alleges that he wanted to return to work that day but was not able to because he was not able to walk or move around without pain. Def. SOF at ¶ 37. After speaking with Betza, Plaintiff did not report to work and instead returned home. Def. SOF at ¶ 37. At 10:10 AM, Plaintiff emailed Betza and stated:

> I just finished speaking with my doctor and based on that discussion and how I am currently feeling it seems that the best thing to do is to extend my disability for at least 2 months.
>
> I do not feel it would be in my best interest or Sprint's to return at this time because unfortunately I am still not 100% and I may require an additional procedure or two to fully restore my health.

Def. SOF at ¶ 38. Sprint did not respond to this letter. Pl. SOF at ¶ 47.

On September 2, 2009, Sprint sent Plaintiff a letter notifying him that his request for LTD benefits had been approved and that, once he has been approved for and begins receiving LTD benefits, he is "no longer considered an active employee of Sprint." Def. SOF at ¶¶ 28, 39. Sprint alleges that Plaintiff's employment was considered terminated as of that date because "he was unable to return to work and had elected to receive Long Term Disability benefits." Def. SOF at ¶ 40. On November 17, 2009, Plaintiff contacted Betza and Spence and notified them that he had finished his final nerve treatment and is "back to almost 100%." Def. SOF at ¶ 42. Plaintiff then inquired as to whether there were "any positions available[.]" Def. SOF at ¶ 42. Plaintiff incorrectly listed Spence's email address and acknowledges that she presumably did not receive this inquiry. Def. SOF at ¶ 43.

On September 17, 2010, Plaintiff brought the present action against Sprint and Betza in the Superior Court of New Jersey, Bergen County, alleging violations of the New Jersey Law Against Discrimination ("NJLAD"). *See* Def. SOF at ¶¶ 53-54. The Complaint was removed to

6

this Court on November 8, 2010, and Sprint filed a counterclaim against Plaintiff alleging that Plaintiff received and retained STD benefits and commissions that he was not entitled to retain.[3] *See* CM/ECF Nos. 1, 22. On February 8, 2013, Plaintiff and Defendants filed the present cross motions for summary judgment. CM/ECF Nos. 56 and 57.

## II. LEGAL STANDARDS

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Bender v. Twp. of Monroe*, 289 F. App'x 526, 526-27 (3d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). On a summary judgment motion, the moving party must first show that there is no genuine issue of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact; the non-moving party may not simply rely on unsupported assertions, bare allegations, or speculation. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III. DISCUSSION

### A. Plaintiff's Claims Against Defendant Sprint

---

[3] On April 5, 2013, the parties notified the Court that Sprint "accepted an offer from [Plaintiff] for settlement of all counterclaims" and "hope[s]" to complete settlement of these counterclaims in the "near future." CM/ECF No. 66. In light of the parties' representation to the Court, the Court will not address Defendants' motion for summary judgment on its counterclaims. *See* CM/ECF No. 66. In the event that the parties are unable to settle these claims, Defendants may, with leave of the Court, renew their motion for summary judgment with respect to these claims.

7

In Counts One, Two, and Three of Plaintiff's Complaint, Plaintiff alleges that Sprint (1) failed to accommodate Plaintiff in violation of the NJLAD; (2) failed to consider accommodating Plaintiff prior to termination in violation of the NJLAD; and (3) wrongfully terminated Plaintiff in violation of the NJLAD. Compl. at ¶¶ 27, 34, 40. Sprint and Plaintiff filed cross motions for summary judgment on each of these claims. CM/ECF Nos. 56, 57. For the reasons that follow, Plaintiff's motion is denied and Sprint's motion is granted.

### 1. Failure to Accommodate

In Count One of Plaintiff's Complaint, Plaintiff alleges that Sprint violated the NJLAD when it "failed and refused to make a reasonable accommodation to Plaintiff by extending his leave of absence beyond September 1, 2009 and/or until December 1, 2009." Compl. at ¶ 27. Specifically, Plaintiff alleges that Sprint should have granted Plaintiff's September 1, 2009, request to extend his disability leave of absence. Pl. Opp'n. at 10. The NJLAD requires that an employer "make a reasonable accommodation to the limitations of an employee who is a person with a disability," which includes granting "leaves of absence" where appropriate. N.J. ADMIN. CODE § 13:13-2.5(b).

To prevail on a claim for failure to accommodate, an employee must demonstrate that he "could perform the essential functions of employment with reasonable accommodations." *See Victor v. State*, 401 N.J. Super. 596, 614-15 (App. Div. 2008). There are four elements that an employee must demonstrate to meet this burden. *See Victor*, 401 N.J. Super. at 615; *see also Alotto v. ECSM Util. Contrs., Inc.*, No. 09-1144, 2010 U.S. Dist. LEXIS 132508, *9 (D.N.J. Dec. 15, 2010). First, the employee must show that the "employer knew about the employee's disability." *Alotto*, 2010 U.S. Dist. LEXIS 132508 at *9. Second, he must show that he "requested an accommodation." *Id*. Third, he must show that the "employer did not make a

8

good faith effort to assist" the employee. *Id.* Finally, the employee must show that the "employee could have been reasonably accommodated." *Id.* Here, Plaintiff does not meet his burden at steps three and four.

Plaintiff alleges that Sprint failed to make a good faith effort to assist him because it immediately denied Plaintiff's September 1, 2009, request to extend his leave. *See* Pl. Opp'n. at 5. However, this September 1, 2009, request cannot be viewed in isolation. Sprint had already taken significant action to accommodate Plaintiff. Plaintiff initially requested a leave of absence for the month of January 2009 to recover from his back injuries. Def. SOF at ¶¶ 10-11. Sprint granted this request. Def. SOF at ¶ 11. Plaintiff and/or his physician subsequently asked Sprint to extend Plaintiff's leave on four separate occasions. *See* Def. SOF at ¶¶ 12, 16, 18-19, 27. Sprint granted each of these requests. *See* Def. SOF at ¶¶ 12, 16, 18-19, 27. In total, Sprint provided Plaintiff with eight months of leave to accommodate his disability. *See* Def. SOF at ¶¶ 10-12, 16, 18-19, 27. Sprint only terminated Plaintiff after it became clear that Plaintiff would not be able to return to work for what was then an indefinite period of time. *See* Def. SOF at ¶ 38 (email from Plaintiff asking to "extend [his] disability for at least 2 months."). In light of these facts, the Court finds that Sprint engaged in a "good faith effort to assist" Plaintiff. *See Alotto*, 2010 U.S. Dist. LEXIS 132508 at *9.

Plaintiff further alleges that "accommodation could have been reasonable achieved" if Sprint granted Plaintiff an additional leave of absence for "approximately 90 days." *See* Pl. Opp'n. at 29; *see also Victor*, 401 N.J. Super. at 615. This argument is unpersuasive for two reasons. First, Plaintiff never requested a leave of absence for 90 days. *See* Def. SOF at ¶ 38. Plaintiff indicated that he would need "at least two months" leave, but did not include an "expected duration of the impairment" or anticipated return date. *See* Def. SOF at ¶ 38; *see also*

9

*Valdez v. McGill*, 462 F. App'x 814, 818 (10th Cir. 2012) (stating that a "leave of absence may be a reasonable accommodation so long as the employee's request states the expected duration of the impairment."); *Brown v. Dunbar Armored, Inc.*, No. 08-3286, 2009 U.S. Dist. LEXIS 115572, *14 (D.N.J. Dec. 10, 2009) (stating that a "date certain of return" is not required where Plaintiff provides a "general estimation of the date of an employee's recovery"). Second, it was unclear at this time "if or when [Plaintiff] would sufficiently recover from his impairments to be able to return to work." *See Valdez*, 462 F. App'x at 818. Plaintiff and/or his physician had predicted an estimated return date on five prior occasions and had been incorrect on each occasion. *See* Def. SOF at ¶¶ 10-12, 16, 18-19, 27. "[A]t a certain point holding a job open for an extensive or indeterminate period of time becomes unreasonable." *Malone v. Aramark Services, Inc.*, 334 N.J. Super. 669, 680 (Law Div. 2000). Accordingly, Sprint is entitled to summary judgment on Plaintiff's failure to accommodate claim. *See Alotto*, 2010 U.S. Dist. LEXIS 132508 at *9.

### 2. Failure to Consider Accommodations Prior to Termination

In Count Two, Plaintiff alleges that Sprint violated the NJLAD when it "failed and refused to consider a reasonable accommodation prior to terminating Plaintiff." Compl. at ¶ 34. N.J. ADMIN. CODE § 13:13-2.5(b)(2) mandates that employers "consider the possibility of reasonable accommodations before firing" a "person with disability." N.J. ADMIN. CODE § 13:13-2.5(b)(2). Plaintiff argues that Sprint violated this statute because it was "aware that [Plaintiff] was seeking an accommodation on August 31 and September 1, they did not discuss, explore or consider an accommodation, but simply ignored his requests and proceeded to terminate his employment." Pl. Opp'n. at 31. Sprint moves for summary judgment on Plaintiff's

claim arguing that "Sprint made a good faith effort to assist Plaintiff with identifying a reasonable accommodation." Def. Br. at 19. The Court agrees.

As discussed above, Plaintiff's final request for accommodations cannot be viewed in isolation. Plaintiff and Sprint maintained a constant dialogue. *See* Def. SOF at ¶¶ 10-12, 16, 18-19, 27. Plaintiff requested and received a leave of absence for the month of January 2009. Def. SOF at ¶¶ 10-11. Sprint then worked with Plaintiff to provide him with additional leave to recover. *See* Def. SOF at ¶¶ 12, 16, 18-19, 27. In total, Sprint considered and granted Plaintiff's request for an extension on four occasions, giving him eight total months of leave. *See* Def. SOF at ¶¶ 10-12, 16, 18-19, 27. Sprint only terminated Plaintiff when Plaintiff notified Sprint that he would be unable to return to work for "at least two [more] months." *See* Def. SOF at ¶ 38. Plaintiff did not provide an anticipated end date, and there was no indication "if or when [Plaintiff] would sufficiently recover from his impairments to be able to return to work." *See* Def. SOF at ¶ 38; *see also Valdez*, 462 F. App'x at 818. Accordingly, Plaintiff's failure to accommodate claim is not supported by the facts before this Court, and Sprint is entitled to summary judgment.

### 3. Wrongful Termination

In Count Three, Plaintiff alleges that "Sprint violated Plaintiff's rights under the NJLAD by terminating him because of his disabilities." Compl. at ¶ 40. A wrongful termination claim under the NJLAD involves a three stage burden-shifting scheme. *See Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447-49 (2005). First, Plaintiff must establish a prima facie case of disability discrimination. *Id.* at 447. Next, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason for the employer's action." *Id.* at 449. Finally, the burden returns to the employee to demonstrate by a "preponderance of the evidence that the reason articulated by

the employer was merely a pretext for discrimination and not the true reason for the employment decision." *Id.* Here, Sprint argues that Plaintiff failed to meet its burden at steps one and three. *See* Def. Br. at 32, 35. The Court will address each of the three steps in turn.

At stage one, a plaintiff bears the burden of establishing a *prima facie* case of discrimination, which in turn "creates an inference of discrimination." *Zive*, 182 N.J. at 449. To do so, a plaintiff must demonstrate that (1) he had a disability within the meaning of the NJLAD; (2) he was qualified to perform the essential functions of the job position, with or without accommodation; (3) he nevertheless suffered an adverse employment action; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position. *Id.* at 450. Here, Sprint alleges that Plaintiff has not met his burden of demonstrating that he suffered from an adverse employment action. Def. Br. at 33. Specifically, Sprint argues that "Plaintiff was not actually 'fired.' Instead, Plaintiff elected to accept benefits that Sprint offered to employees who indicated that they had a long term disability (one lasting more than 180 days)." Def. Br. at 32.

Sprint's argument is unpersuasive for two reasons. First, the facts do not support a finding that Plaintiff knew his employment would end if he accepted these benefits. In Plaintiff's September 1, 2009, email requesting additional leave, he indicated that he would "love for Sprint to hold [his] job" while he is on disability. Def. SOF at ¶ 38. Moreover, Plaintiff had sought LTD benefits on a prior occasion, and, despite clear language in his benefits letter, "Plaintiff's employment was not terminated as of that date." Def. SOF at ¶¶ 21, 28-29. Second, Sprint acknowledged in its undisputed statement of facts that Plaintiff's employment was "considered terminated" as of September 2, 2009. Def. SOF at ¶ 40. "The evidentiary burden at the *prima facie* stage is rather modest," and Plaintiff met this burden. *Zive*, 182 N.J. at 448

(quotations and citations omitted). Accordingly, the matter moves to the second stage of the burden-shifting scheme. *Id.* at 449.

At stage two, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's action." *Id.* Here, Sprint alleges that it had a "legitimate non-discriminatory business reason for Plaintiff's employment termination – Plaintiff's inability to return to work for nearly a year." Def. Br. at 33. Sprint further explains that "Plaintiff's absence had a negative effect on Betza's sales team. Each of the other seven members of the team had to cover more accounts, deal with more issues, and address more customer complaints than they would have had to if Plaintiff had been able to cover his own accounts." Def. Br. at 34. Sprint's argument is supported by the facts before this Court. The Court will not second guess Sprint's "business judgment." *See Jason v. Showboat Hotel & Casino*, 329 N.J. Super. 295, 308 (App. Div. 2000) (quotations omitted). Sprint has met its burden at stage two. *See Zive*, 182 N.J. at 446 (stating that the NJLAD "prevents only *unlawful* discrimination against disabled individuals; it does not prevent the termination or change of employment of any person who is unable to perform adequately the duties of employment" (emphasis in the original) (quotations and citations omitted)).

At stage three, the burden returns to the plaintiff. *See id.* at 449. To defeat summary judgment, the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543, 551 (App. Div. 1995) (quotations and citations omitted). In other words, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or

13

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them 'unworthy' of credence." *Kolb v. Burns*, 320 N.J. Super. 467, 478 (App. Div. 1999) (quotations omitted). Here, Plaintiff makes arguments under both prongs of *Romano*. *See* Pl. Opp'n. at 34, 36.

First, Plaintiff argues that Sprint's "asserted legitimate non-discriminatory reasons for terminating Plaintiff were pretext." Pl. Opp'n. at 34. Plaintiff explains that Sprint initially claimed it was required to terminate Plaintiff pursuant to the "terms of its LTD plan." Pl. Opp'n. at 35. Subsequently, Sprint claimed it terminated Plaintiff because he "was totally disabled and unable to return to work[.]" Pl. Opp'n. at 35 (quotations omitted). In light of these alleged inconsistencies, Plaintiff argues that a "reasonable finder of fact need not believe that there was a business necessity for Sprint's termination of [Defendant's] employment." Pl. Opp'n. at 36.

Plaintiff's argument is unpersuasive as it omits a key fact. Sprint acknowledges departing from the terms of its LTD plan in an effort to accommodate Plaintiff's disability. *See* Def. SOF at ¶¶ 28-29. Sprint only terminated Plaintiff when Sprint's efforts to accommodate him failed and it became apparent that he would not be able to return to work for an indefinite period of time. *See* Def. SOF at ¶ 38 (email from Plaintiff asking to "extend [his] disability for at least 2 months."). Sprint's articulated reason is consistent with the facts, and Plaintiff has not identified any "evidence" from which a reasonable fact finder could disbelieve Sprint's "articulated legitimate reason." *See Romano*, 284 N.J. Super. at 551. Accordingly, Plaintiff's argument under the first prong of *Romano* fails. *See id.*

Second, Plaintiff argues that his "disability was a motivating factor in [Sprint's] termination decision and that, without those impermissible motivations, [Sprint] would not have made the same decision to terminate Plaintiff's employment." Pl. Opp'n. at 34. In support of his

argument, Plaintiff notes that, 1) "there is no evidence in the record that [Sprint] intended to terminate Plaintiff's employment prior to his need to take time off," 2) Sprint was aware Plaintiff was suffering from a disability, 3) Plaintiff informed Sprint that "he would require further treatment," and 4) by "Defendant Sprint'[s] own admission it was motivated in its decision to terminate him because of his temporary need to be absent from work." Pl. Opp'n. at 36-37.

Plaintiff's argument is unpersuasive. First, Plaintiff misstates the facts before this Court. Sprint never acknowledged that its decision to terminate Plaintiff was because of his "temporary need to be absent from work." *See generally*, Def. SOF at ¶ 40. Plaintiff requested an extension of his leave of absence for "at least two months," and Sprint acknowledges terminating him because he was unable to return to work for this *indefinite* period of time. *See* Def. SOF at ¶¶ 38, 40. Second, although Plaintiff asserts that Sprint was aware of Plaintiff's disability, Pl. Opp'n. at 37, Plaintiff does not identify any "evidence, direct or circumstantial, from which a factfinder could reasonably . . . believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause." *See Romano*, 284 N.J. Super. at 551. The undisputed evidence before this Court shows that Sprint terminated Plaintiff when he was unable to return to work and no reasonable accommodations were possible. Accordingly, Plaintiff fails to meet his burden at the third stage of the burden-shifting scheme, and Sprint is entitled to summary judgment on Plaintiff's wrongful termination claim. *See id.*

### B. Plaintiff's Claims Against Defendant Betza

In Counts One, Two, and Three of Plaintiff's Complaint, Plaintiff alleges that Betza is "individually liable under NJLAD." Compl. at ¶¶ 29, 36, 42. As to the wrongful conduct alleged, Plaintiff argues that Betza knowingly gave "substantial assistance or encouragement to the unlawful conduct" of Sprint by "refusing to provide reasonable accommodation[s]" to

Plaintiff. Compl. at ¶¶ 29, 36, 42. The NJLAD expressly prohibits any supervisor from aiding, abetting, inciting, compelling, or coercing the "doing of any of the acts forbidden" under the NJLAD. N.J. ADMIN. CODE § 10:5-12. To succeed on an adding and abetting claim, a plaintiff must demonstrate that his supervisor:

> (1) aided [the employer] in performing a wrongful act that causes an injury;
>
> (2) was generally aware of his role as part of an overall illegal or tortious activity at the time he provided assistance; and
>
> (3) knowingly and substantially assisted the principal violation.

*Berckman v. UPS*, No. 07-5245, 2007 U.S. Dist. LEXIS 84447, *14 (D.N.J. Nov. 14, 2007) (citing *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004)).

Here, Betza alleges that Plaintiff failed to meet its burden and therefore cannot prove that "Betza aided or abetted an act of discrimination by Sprint." Def. Br. at 37. In support of his argument, Betza relies on Plaintiff's deposition testimony, wherein Plaintiff was asked what he "contend[ed] Ken Betza did wrong that create[d] a claim by you against him?" *See* Def. Br. at 37; *see also* Def. SOF at ¶ 55. Plaintiff responded, "I don't know." *See* Def. Br. at 37 (citing Def. SOF at ¶ 55). Plaintiff later elaborated that:

> [I] don't know if I have a good answer. Ken, like you said, he was very helpful. I think towards the end of the process I think there was more he could have done to maybe inform me of what was going on. I felt like I was kind of hung out to dry. There seemed to be no, like, communication. And as I found out today, it seemed like he didn't know that much either.

*See* Def. Br. at 37 (citing Def. SOF at ¶ 55); *see also* Pl. SOF at ¶¶ 35, 47 (stating that Betza never responded to Plaintiff's August 31, 2009, or September 1, 2009, emails). The Court finds this evidence insufficient to support an aiding or abetting claim. *See Berckman*, 2007 U.S. Dist. LEXIS 84447 at *14. Failure to respond to emails, under these facts, does not rise to the level of

16

"substantial assistance." *See id.* Accordingly, Betza is entitled to summary judgment in his favor on Counts One, Two, and Three of Plaintiff's Complaint.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment on Plaintiff's Complaint is denied, and Defendant's Motion for Summary Judgment on Plaintiff's Complaint is granted. An appropriate Order accompanies this Opinion.

DATED: April 16, 2013

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE